**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

SETH CAMERON VIRGIL )
)
v. ) CASE NO.: 1:25-cv-01641
)
EXPERIAN INFORMATION SOLUTIONS INC, )
FIRST ADVANTAGE BACKGROUND )
SERVICES CORPORATION, )
LEASINGDESK SCREENING, )
REALPAGE ON-SITE, )
CORELOGIC SAFERENT, )
CORELOGIC BACKGROUND DATA, )
ENTRATA, INC, )
RESIDENT VERIFY LLC, )
YARDI SYSTEMS INC, )
RENTGROW INC, )
XACTUS LLC, )
COLUMBIA DEBT RECOVERY, LLC *dba* )
GENESIS CREDIT MANAGEMENT LLC, )
ACENTO REAL ESTATE PARTNERS LLC, )
AION MANAGEMENT, LLC, )
ALLEGIANT-CARTER MANAGEMENT LLC, )
ALLEN & ROCKS INCORPORATED, )
AVALONBAY COMMUNITIES INC, )
THE BAINBRIDGE COMPANIES LLC, )
BELL PARTNERS INC, )
BOZZUTO MANAGEMENT COMPANY, )
BRICK LANE PM LLC, )
BROOKFIELD PROPERTIES )
MULTIFAMILY LLC, )
C I M GROUP LP, )
COUNTRY VILLAGE GARDENS LLC, )
CUSHMAN & WAKEFIELD U.S., INC., )
DONALDSON GROUP LLC, )
DRUCKER + FALK LLC, )
DWECK PROPERTY MANAGEMENT LLC, )
ELME COMMUNITIES, )
FAIRFIELD PROPERTY MANAGEMENT II INC,)
GENE B. GLICK COMPANY, )
GREYSTAR MANAGEMENT SERVICES LLC, )
HIGHMARK RESIDENTIAL, LLC, )
JLB RESIDENTIAL LLC, )
KLINGBEIL CAPITAL MANAGEMENT LTD, )
LARAMAR COMMUNITIES LLC, )

LEGEND MANAGEMENT GROUP LLC, )
MISSION ROCK RESIDENTIAL LLC, )
MORGUARD FENESTRA APARTMENTS LLC, )
PINNACLE PROPERTY )
MANAGEMENT SERVICES, )
REDPEAK PROPERTIES LLC, )
SIGNATURE PROPERTIES LLC, )
UDR INC, )
WILLOW BRIDGE PROPERTY )
COMPANY NATIONAL LLC, )
ABBOTTS RUN ASSET MANAGEMENT LLC, )
29 SC SHELBY PROPERTY OWNER LLC, AND )
MRI SOFTWARE LLC. )

---

**PLAINTIFF'S OPPOSITION TO BOZZUTO MANAGAMENT COMPANY'S UNTIMELY MOTION TO DISMISS FOR PURPORTED LACK OF JURISDICTION**

---

Plaintiff Seth Cameron Virgil, by undersigned counsel, hereby opposes Bozzuto Management Company's move to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. ("Rule") 12(b)(2) (the "Motion"), which asserts a waived defense[1] and otherwise misses the mark.

## I. PRELIMINARY STATEMENT

Bozzuto's Motion is procedurally defective as an initial dispositive matter. By filing its Motion after the deadline for its first responsive pleading, Bozzuto waived any personal-jurisdiction defense under Rule 12(h)(1). Aside from this, the Complaint and record establish specific jurisdiction: Bozzuto purposefully directed conduct at an Indiana resident by procuring and using his consumer and tenant-screening reports to process fraudulent lease applications; Plaintiff's claims arise directly from that conduct; and litigating in Indiana is fair and reasonable. Bozzuto's effort to recast itself as a marginal actor does not comport with the detailed allegations of its considerable predicate involvement and the resulting harm to Plaintiff's credit and reputation.

---

[1] See *id*. at 12(a)(1)(A)(i) together with 12(h)(1)(B).

## II. RELEVANT BACKGROUND

### A. Bozzuto's Property-Specific Screening Events and Notice of Indiana Residence.

The Complaint names Bozzuto Management Company and identifies five implicated properties it owned and/or managed—West Broad (Falls Church), Ovation at Park Crest (McLean), View Ballston (Arlington), Park + Ford (Alexandria), and Woodway at Trinity Centre (Centreville). The pleadings allege further that, during the relevant four-month timeframe, Bozzuto procured and misused respective integrated tenant-screening reports for each underlying property site. The allegations are also indicative of those reports placing Bozzuto on actual notice of Plaintiff's primary Indianapolis residence and long-time Indiana domicile. These same reports also imbedded address-discrepancy warnings in relation to Plaintiff's explicated Indiana residence.

**Park + Ford (4/27/2022, RentGrow)**: The screening file lists Plaintiff's primary address as 307 N Pennsylvania St, Apt 902, Indianapolis, IN 46204 and another address as 451 E Market St, Apt 203, Indianapolis, IN 46204; it also notes the SSN was issued in Indiana. Bozzuto nevertheless recorded an ACCEPT decision on the integrated modules;

**View Ballston (5/16/2022, RentGrow)**: The report again shows the Indianapolis addresses in the Equifax identity header and triggers checkpoint alerts stating "Inquiry address is not associated with this consumer name" and "A substantially different address was entered." Bozzuto proceeded to an ACCEPT outcome;

**West Broad (5/16/2022, RentGrow)**: The Equifax identity section again lists the Indianapolis addresses and repeats the same address-mismatch alerts;

**Ovation—Park Crest (5/17/2022, RentGrow)**: The report displays the Indianapolis addresses and the same mismatch warnings; while the page reflects PENDING (If

accepted, Standard Deposit), procurement and component searches had already occurred, placing the Indiana residence in front of Bozzuto at intake; and

**Woodway at Trinity Centre (6/09/2022, SafeRent)**: The Equifax credit details list the same Indianapolis addresses and add a credit-bureau address discrepancy alert; the community decision recorded was ACCEPT (score 724) after multiple integrated sub-reports (credit, CrimSAFE, Multi-State PLUS, MSSO, RegistryCHECK, Score).

Taken together, these reported tenant / background screenings demonstrate repeated procurements and uses of Plaintiff's consumer reports, each which identified him as an Indiana resident and, in most if not all instances, warned of obvious address discrepancies.

### B. The Equifax MSJ Order Addresses the Same Screening/Inquiry Transactions

In a related action, *Virgil v. Equifax*, this Court found that it could be reasonably concluded that Equifax, as a consumer reporting agency, overlooked obvious fraud indicators—including address discrepancies—across dozens of apartment "soft" inquiries and failed to confine furnishing to permissible purposes. This Court recognized that, whether any 1681b permissible purpose existed requires factual development in this forum. Keeping this case's claims against Bozzuto here, which arise from the same factual nucleus, thus promotes consistency and economy.

### C. Bozzuto's Public Admissions and Policies Confirm Its Knowledge and Duties

The Complaint alleges that Bozzuto has publicly recognized an "enormous uptick in all types of applicant fraud" and the need for "standard screening, ID-verification software … and manual review to cut down on fraud," acknowledging that fraudsters often "get into an apartment community [and] then skip out after a few months when it's apparent that they cannot pay, often with no repercussions." Bozzuto's online-accessible privacy policy also discloses that it collects names, addresses, Social Security numbers, employment information, credit details, and other

sensitive data to evaluate applications, verify identity, process payments, and comply with legal requirements. They also disclose using reasonable security measures; limiting services to U.S. residents; and sharing data with third-party providers (screeners/CRAs) to validate identities, confirm income, and prevent fraud. These disclosed representations concede the necessity of robust screening and fraud prevention and implicitly promise to conduct those checks responsibly. But here, it seems that Bozzuto did not follow these procedures as it missed obvious red flags and thereby processed and approved ascertainably falsified applications under Plaintiff's misappropriated name and identity. This underscores the foreseeability of Indiana-felt harm.

## III. LEGAL STANDARD

Specific jurisdiction exists where (1) the defendant purposefully directed conduct at the forum (often analyzed under the Calder "effects" test for intentional acts), (2) the claims arise out of or relate to that conduct, and (3) exercising jurisdiction accords with fair play and substantial justice. See, *e.g.*, *Calder v. Jones*, 465 U.S. 783 (1984) (express aiming and in-forum effects); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (purposeful availment through deliberate, ongoing contacts); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) ("relates to" standard does not require strict causation). Seventh Circuit and S.D. Ind. decisions likewise recognize jurisdiction where identity misuse and FCRA harms are felt by an in-forum resident. See *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010) together with *Myers v. Passport Health*, 2013 WL 5819270, at *5 (S.D. Ind. Oct. 29, 2013).

## IV. LEGAL ARGUMENT

### 1. Bozzuto Waived its Asserted Personal Jurisdiction Defense

Bozzuto was served on September 2, 2025. Its responsive pleading was due September 23, 2025. See Rule 12(a)(1)(A)(i). Bozzuto did not file an answer or motion by that deadline. Instead,

it filed the present Motion on September 24, 2025, one day after its time to respond had expired, and did so without seeking an extension. Under Rule 12(h)(1), a defense of lack of personal jurisdiction is waived if not asserted in a defendant's first responsive pleading. The Seventh Circuit strictly enforces this rule. Bozzuto's late filing therefore forfeits its jurisdictional objection. Denial of the motion is warranted on this ground alone. Even assuming otherwise, Bozzuto is subject to specific personal jurisdiction in Indiana. Here, the Court must consider three elements: (A) whether Bozzuto purposefully directed its conduct toward Indiana; (B) whether the claims arise out of or relate to its forum-related conduct; and (C) whether exercising jurisdiction is fair and reasonable.

**2. Bozzuto Purposefully Directed Forum-Connected Conduct At Indiana**

Bozzuto's role as property manager demonstrates purposeful direction. It actively processed lease applications and ordered tenant-screening reports from RentGrow and SafeRent (and related transactions reflected in the Equifax inquiry chronology). This happened with knowledge that those reports would pull and process Plaintiff's Indiana-based identity and credit information. The Complaint also pleads the who/where/when/how for each Bozzuto site—specifying that Bozzuto-directed procurements and integrated report uses for each property.

By using national consumer-reporting systems to vet tenants, Bozzuto intentionally reached into Indiana to obtain Plaintiff's private data and to create or approve rental accounts in his name. These actions were not accidental—they were repeated and deliberate. The screening files show multiple instances in which Bozzuto initiated transactions, pulled credit and background reports, and received "Accept" recommendations on fraudulent applications: Park + Ford (ACCEPT), View Ballston (ACCEPT), West Broad (ACCEPT), and Woodway (ACCEPT 724), with Ovation showing Pending after procurement. (Bozzuto's standardized RentGrow policy tag—POLICY: BOZZ17—reflects a uniform background screening transactional flow.)

Bozzuto's knowledge that it was dealing with an Indiana resident is evident from the those reports themselves. Each RentGrow/SafeRent identity header lists Indianapolis, Indiana addresses for Plaintiff, and most to all reports trigger address-mismatch/discrepancy alerts—warnings Bozzuto saw yet proceeded past: Park + Ford (Indiana addresses; SSN issued IN, View Ballston (Indiana addresses; "Inquiry address is not associated … / A substantially different address was entered"), West Broad (same), Ovation (same, with procurement completed), and Woodway (Indiana addresses + credit-bureau address discrepancy).

This satisfies the *Calder* "effects" test (intentional conduct expressly aimed at the forum causing in-forum harm) and the *Burger King* purposeful-availment standard (deliberate, repeated transactions leveraging national credit and identity systems to engage an Indiana resident). Seventh Circuit and S.D. Ind. authority mirror that result where, like here, identity misuse and FCRA injuries are suffered by an in-forum plaintiff. See *supra*.

**3. The Claims Arise Out Of And Relate To Bozzuto's Forum-Directed Conduct**

Plaintiff's FCRA and related claims implicate Bozzuto's procurement and use of his consumer reports and embedded sub-reports—events that the Complaint pleads for each Bozzuto property on specific dates through identified screeners. The Complaint furthers that the resulting injuries—privacy invasion, remediation costs, reputational damage—also were felt in Indiana.

Under *Ford Motor*, a claim "arises out of or relates to" forum contacts when tied to the defendant's forum-directed activity even if the last act occurred elsewhere. Here, the claims are rooted in Bozzuto's intentional procurement/use of Indiana-tied PII and tenant-screening data and the effects of that use felt in Indiana—easily satisfying *Ford Motor's* relatedness standard.

**4. Exercising Jurisdiction Is Fair, Reasonable, And Equitable**

Maintaining the claims against Bozzuto here in Indiana comports with traditional notions of fair play and substantial justice. Indiana has a strong interest in protecting its residents from identity theft and credit abuse, and Plaintiff has chosen his home forum for convenience and effective relief. Bozzuto is a sophisticated, multi-state property manager. As such, defending this case in Indiana poses little burden compared to the harm inflicted on an Indiana resident. Moreover, keeping Bozzuto in this case promotes judicial efficiency by allowing one court to resolve overlapping claims against numerous defendants, avoiding piecemeal litigation and inconsistent judgments. In view of Bozzuto's purposeful conduct and the equities of this dispute, exercising jurisdiction is reasonable. This is also supported by the MSJ order in Vi*rgil v. Equifax*, which has already addressed the same screening and inquiry transactions at issue in this litigation.[2]

## V. CONCLUSION

Bozzuto's Motion should be denied on multiple dispositive grounds. First, Bozzuto waived its personal-jurisdiction defense by filing its Motion after the deadline for a first responsive pleading. Second, even if the Court were to reach the merits, Bozzuto's purposeful conduct—actively obtaining and using an Indiana resident's consumer reports and tenant-screening data to approve fraudulent leases—subjects it to specific personal jurisdiction in Indiana. Plaintiff's claims arise directly from that conduct, and the exercise of jurisdiction is fair and reasonable. The Complaint's preliminary allegations, Bozzuto's public statements about the rise of rental-application fraud as well as Bozzuto's privacy/terms disclosures all reinforce these conclusions. Plaintiff thus requests that the Court require Bozzuto to respond to the Complaint on the merits.

[2] If the Court concludes that personal jurisdiction is lacking or that venue is improper, the proper remedy is transfer, not dismissal. See 28 U.S.C. § 1631 (transfer to cure want of jurisdiction) and § 1406(a) (transfer in the interest of justice where venue is wrong); see also § 1404(a) (convenience transfer).

Respectfully submitted,

*/s/ James Louis Policchio* ______
James Louis Policchio (34737-49)
**JL POLICCHIO LAW LLC**
james@jlouislaw.com; 317.779.9919

*/s/ Kyle Schumacher*
PO Box 558, Spring Branch, TX 78070
503-482-8137;kyle@schumacherlane.com
***Counsel For Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2025, I filed a copy of the foregoing electronically with the Clerk of the Court. As authorized by Fed. R. Civ. P. 5, notice of this filing will be sent to all attorneys of record through the Court's Electronic Case Filing System.

Respectfully submitted,

*/s/ James Louis Policchio* ____
James Louis Policchio (34737-49)