**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SETH CAMERON VIRGIL | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:25-cv-01641 |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS INC, | ) | |
| Et al. | ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**REDPEAK PROPERTIES, LLC'S RULE 12(b)(2) MOTION TO DISMISS**

---

Plaintiff Seth Cameron Virgil, by undersigned counsel, hereby opposes "RedPeak" Properties, LLC's Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. ("Rule") 12(b)(2) (the "Motion"). In opposition to RedPeak's Motion, Plaintiff states as follows:

## I. PRELIMINARY STATEMENT

Specific jurisdiction exists because Plaintiff's claims arise directly from RedPeak's purposeful decision to initiate and use a tenant-screening transaction that pulled an Indiana resident's credit file and flagged that Indiana address mismatch—on RedPeak's own policy code—for RedPeak's Denver property, *The Seasons of Cherry Creek*. The RentGrow records tie that screening to RedPeak ("POLICY: REDP01"), confirm the report was used in connection with an application to "The Seasons of Cherry Creek (E0795)," and evidences an Equifax credit file listing Plaintiff's *Indianapolis* address as the primary address along with a "checkpoint" mismatch warning, stating "*Inquiry address is not associated with this consumer name A substantially different address was entered; Inquiry SSN was confirmed. Issued in 1992 in IN.*"

RedPeak purposefully directed its conduct at this Indiana forum by causing a consumer report about an Indiana resident to be obtained and used to transact its leasing business; the claims

arise from that very contact; and exercising jurisdiction comports with fair play and substantial justice. RedPeak's Motion and request for a more definite statement should therefore be denied.

## II. RELEVANT FACTS

Plaintiff resides in Marion County, Indiana, and alleges his injuries were incurred here. On **May 26, 2022**, well before Plaintiff had been aware of it, RentGrow generated a *Screening Report on behalf of Plaintiff – Seth Virgil* – for "**The Seasons of Cherry Creek (E0795)**," a RedPeak property in Denver, CO, which returned an "Accept with Conditions – 1/2 Month Rent Deposit."" The consumer report is explicitly tied to Indiana, which is highlighted by the report's address discrepancy warning. That same report incorporated an Equifax Credit Report with Plaintiff's "**PRIMARY ADDRESS: 307 N PENNSYLVANIA ST APT 902, INDIANAPOLIS, IN** 46204," and included checkpoint messages: "Inquiry address is not associated with this consumer name" and "A substantially different address was entered." The relevant record also summarizes that, for the Seasons of Cherry Creek (05/26/2022) submission, the input header address conflicted with bureau data, again noting the bureau primary address in Indianapolis.

The Complaint alleges that RentGrow—on behalf of The Seasons of Cherry Creek—made a credit report inquiry to Equifax, that a falsified application was submitted to RedPeak for that property, and that RedPeak charged a returned EFT fee, creating a $34 balance. The Complaint identifies the property's address as 3498 E. Ellsworth Avenue, Denver, Colorado and pleads that a RentGrow screening report was generated for that property the same day. The Complaint further pleads that The Seasons was later acquired by Broe Real Estate Group in July 2023, and the unpaid balance initially procured by RedPeak was written off on December 31, 2023—confirming RedPeak's involvement at the time of the May 2022 screening.

RedPeak's motion attaches an affidavit asserting it is a Delaware LLC with its principal (and only) place of business in Denver; that it is not registered to do business in Indiana and has no offices, assets, employees, bank accounts, or agent in Indiana. Those assertions speak to general jurisdiction—not to the specific, claim-linked contacts at issue here. In related proceedings in this District, the Court has recognized that this dispute arises from the theft and subsequent use of Plaintiff's PII, which prompted multiple tenant-screening pulls and address-mismatch issues—precisely the kind of background reflected in the RentGrow/Equifax materials here.

## III. LEGAL STANDARD

Specific jurisdiction exists where (1) the defendant purposefully directed conduct at the forum (often analyzed under the Calder "effects" test for intentional acts), (2) the claims arise out of or relate to that conduct, and (3) exercising jurisdiction accords with fair play and substantial justice. See, *e.g.*, *Calder v. Jones*, 465 U.S. 783 (1984) (express aiming and in-forum effects); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (purposeful availment through deliberate, ongoing contacts); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) ("relates to" standard does not require strict causation). Seventh Circuit and S.D. Ind. decisions likewise recognize jurisdiction where identity misuse and FCRA harms are felt by an in-forum resident. See *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010) together with *Myers v. Passport Health*, 2013 WL 5819270, at *5 (S.D. Ind. Oct. 29, 2013).

## IV. LEGAL ARGUMENT

Indiana's long-arm rule is coextensive with federal due process; the question is whether RedPeak has minimum contacts with Indiana such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). Specific jurisdiction exists where (1) the defendant purposefully directed its

conduct at the forum state or purposefully availed itself of the privilege of conducting business there, (2) the plaintiff's claims arise out of or relate to those contacts, and (3) jurisdiction is fair and reasonable. *See Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010); *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 398–400 (7th Cir. 2020). Mere injury to a forum resident is not enough; the defendant's own suit-related conduct must connect it to the forum. *See Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). But conduct purposefully reaching into the forum via interstate transactions that use forum-resident data to transact the defendant's business can suffice. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 427–31 (7th Cir. 2010).

## V. ARGUMENT

**RedPeak purposefully directed suit-related conduct at Indiana**. RedPeak caused a specialty CRA (RentGrow) to obtain and deliver a consumer report about an Indiana resident to screen and transact RedPeak's leasing decision for its Seasons of Cherry Creek property. The RentGrow records leave no doubt the transaction was RedPeak's: the processing metadata expressly lists "POLICY: REDP01" and identifies "The Seasons of Cherry Creek (E0795)." That screening incorporated an Equifax credit report whose primary address for Plaintiff was Indianapolis, and it returned address-mismatch checkpoint warnings highlighting the discrepancy between the input header address and the bureau's Indiana address data. This was not a random or downstream event; RedPeak invoked a nationwide screening workflow to obtain and use an Indiana consumer's credit file to advance its leasing business. That is purposeful availment. See *Burger King*, 471 U.S. at 479–80 (purposeful availment satisfied where defendant "deliberately" engaged in interstate activity and created continuing obligations). RedPeak will point to the absence of an Indiana office, employees, or registration. But those facts, even if accepted, defeat only general jurisdiction. They do not negate the targeted, suit-linked contact shown here.

**Plaintiff's claims arise out of and relate to RedPeak's Indiana-directed contact.** Plaintiff's claims are predicated on the unauthorized procurement and use of his consumer report and PII to open or attempt to open lease accounts, including the Seasons of Cherry Creek transaction for which RedPeak used the RentGrow report at issue. The Complaint pleads the May 26, 2022 Equifax inquiry for Seasons, the contemporaneous falsified application to RedPeak, and RedPeak's returned EFT fee assessment that created a $34 balance—all flowing from the screening transaction reflected in the RentGrow records. Those allegations "arise out of or relate to" RedPeak's Indiana-directed screening contact because the same transaction is both the contact and the wrong. *See Curry*, 949 F.3d at 398–400.

**Exercising jurisdiction comports with fair play and substantial justice.** Litigating in Indiana imposes no undue burden on a Denver-based landlord that transacts leasing decisions nationwide through CRAs and electronic screening vendors and that already invoked interstate systems to obtain an Indiana resident's credit file. Indiana has a compelling interest in protecting its residents from misuse of their consumer reports and PII. Centralizing claims in this Court advances efficiency; related litigation and records are already before this District.

**Walden does not insulate RedPeak.** *Walden* holds that a plaintiff's residence, standing alone, does not create jurisdiction. 571 U.S. at 289. Here, jurisdiction is not premised solely on Plaintiff's residence. It rests on RedPeak's own suit-related conduct: causing a consumer report about an Indiana resident to be obtained and used to advance its property's leasing decision—despite clear indicators within the report that the consumer's primary address was in Indianapolis. That is RedPeak's contact with Indiana, not merely Plaintiff's.

**In the alternative, jurisdictional discovery is warranted**. If the Court harbors any doubt, Plaintiff requests targeted jurisdictional discovery, including: (1) RedPeak's contracts and

configuration with RentGrow (and any other screener) for Seasons, including policy code REDP01; (2) communications, logs, and dashboards reflecting the May 26, 2022 screening; (3) counts of Indiana residents screened for RedPeak properties during the period; and (4) any adverse-action or payment communications touching Indiana. The RentGrow records already supply a prima facie showing; discovery would confirm what the documents suggest.

**Response to RedPeak's Affidavit** RedPeak's affidavit says it is a Delaware LLC, operates only in Denver, and lacks traditional Indiana indicia (registration, office, employees, bank accounts). None of that rebuts specific jurisdiction grounded in RedPeak's decision to transact by obtaining and using an Indiana resident's credit report for a leasing decision. The affidavit does not disclaim the Seasons screening, the policy tie (REDP01), or the use of the Equifax report that prominently displayed an Indianapolis primary address and mismatch warnings.

## VI. CONCLUSION

Because Plaintiff's claims arise from RedPeak's purposeful, suit-related contact with Indiana, the Court has specific personal jurisdiction. The motion to dismiss under Rule 12(b)(2) should be *denied*. In the alternative, the Court should permit focused jurisdictional discovery.

Respectfully submitted,

*/s/ James Louis Policchio*
James Louis Policchio (34737-49)
**JL POLICCHIO LAW LLC**
james@jlouislaw.com; 317.779.9919

*/s/ Kyle Schumacher*
PO Box 558, Spring Branch, TX 78070
503-482-8137;kyle@schumacherlane.com
***Counsel For Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on November, 10, 2025, I filed a copy of the foregoing electronically with the Clerk of the Court. As authorized by Fed. R. Civ. P. 5, notice of this filing will be sent to all attorneys of record through the Court's Electronic Case Filing System.

Respectfully submitted,

*/s/ James Louis Policchio* ____
James Louis Policchio (34737-49)