**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SETH CAMERON VIRGIL | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:25-cv-01641-MPB-MJD |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS INC, et al. | ) | |
| | ) | |

# PLAINTIFF'S RESPONSIVE BRIEF IN OPPOSITION TO BROOKFIELD PROPERTIES MULTIFAMILY LLC'S MOTION TO DISMISS

Brookfield Properties Multifamily LLC ("Brookfield") asks this Court to dismiss the claims against it for lack of personal jurisdiction and untimeliness. Both arguments lack merit. Brookfield—a Delaware company with a principal office in Ohio—has affirmatively **registered to do business in Indiana** and appointed an Indiana agent for service of process. By availing itself of the privilege of conducting business in Indiana, Brookfield has consented to this Court's jurisdiction and can reasonably expect to be sued here. Moreover, Brookfield's **purposeful activities connected to Indiana** give rise to specific jurisdiction: Brookfield (through its agents) obtained Plaintiff's credit reports and opened fraudulent lease accounts using Plaintiff's identity, **harming an Indiana resident in Indiana**. Finally, Plaintiff's claims under the Fair Credit Reporting Act ("FCRA") are timely. The statute of limitations runs from the date the violation was discovered, not when the violation occurred. Plaintiff **did not discover** Brookfield's involvement until 2023, when third-party disclosures revealed that Brookfield's properties were tied to the identity theft scheme. This suit was filed well within two years of that discovery and within five years of the violations, satisfying 15 U.S.C. § 1681p. For these reasons, and as detailed below, Brookfield's Motion to Dismiss should be denied in its entirety.

## I. STATEMENT OF FACTS

**Plaintiff's Indiana Residency & Identity Theft.** Plaintiff Seth Cameron Virgil is an Indiana resident who has lived in Indianapolis since early 2022. In January 2022, he signed a lease for an apartment in downtown Indianapolis, which from then and until today has been his residency address. Unbeknownst to Plaintiff, his personal identifying information (name, Social Security number, date of birth) was stolen and used by imposter(s) to submit fraudulent apartment rental applications in his name across the country. These applications utilized an out-of-date former address of Plaintiff's (925 W. Huron St., Chicago – the "Huron" address) as the supposed current residence. By leveraging Plaintiff's PII and old address, the imposters applied for luxury apartments in multiple states, without Plaintiff's knowledge or consent.

**Involved Properties – "Origin," "8421 Broad," and "8th and G**rand." Brookfield is a national property owner and manager that, upon reasonable belief, owns and/or manages several of the very apartment complexes implicated in the identity theft scheme, including: **Origin** (a luxury apartment in Arlington, VA), **8421 Broad** (a high-rise apartment in Tysons/McLean, VA), and **8th and Grand** (an apartment community in Los Angeles, CA). Each of these properties is **operated by Brookfield or its affiliates**. Indeed, Brookfield's own filings identify those properties as being under its management.

The referenced imposters targeted Brookfield's properties as part of their fraud. Specifically, on April 13, 2022, a tenant screening request was submitted in Plaintiff's name to RentGrow for "Origin" in Arlington. On May 16, 2022, LeasingDesk (RealPage) – **on behalf of 8421 Broad Apartments** – pulled Plaintiff's Equifax credit report, which Equifax dutifully provided and recorded as a soft inquiry. Only days later, on May 21, 2022, a fraudulent lease was opened at **8421 Broad Apartments**, which is expressly managed by Brookfield. This lease ran

through mid-2023 and amassed a staggering **$25,117.35 in unpaid rent** under Plaintiff's name.

Likewise, LeasingDesk – **on behalf of 8th and Grand (Brookfield's Los Angeles property)** – obtained Plaintiff's Equifax credit report as part of a tenant screening. Brookfield's properties thus were on the receiving end of multiple fraudulent applications using Plaintiff's identity, resulting in unauthorized credit inquiries and even executed leases/debts in his name.

**Credit Report Pollution and Plaintiff's Delayed Discovery.** The flurry of fraudulent lease activity left Plaintiff's credit files riddled with false entries traceable to the imposter leases. Equifax's records show 52 separate unauthorized "soft" credit inquiries between January and October 2022 by various tenant screening services (including RentGrow, RealPage/LeasingDesk, and SafeRent), all using the stolen Huron St. address as the applicant's residence. Equifax flagged an address discrepancy in many instances (since Plaintiff's true address was Indianapolis), yet still released Plaintiff's credit data to the requesters. In addition, false addresses connected to the fraudulent leases began appearing on Plaintiff's credit reports.

Crucially, Plaintiff did not apply for these apartments and he received no direct communications about them while the fraud was ongoing. The nature of the scheme – using out-of-state addresses and keeping Plaintiff in the dark – meant Plaintiff had no reason to suspect Brookfield (or any particular landlord) was involved until much later. Plaintiff finally discovered Brookfield's involvement in 2023, when he obtained consumer file disclosures from the tenant screening companies that had pulled his reports in 2022. RealPage's LeasingDesk Screening provided a file disclosure on December 15, 2023 that unveiled detailed rental history information tied to the fraudulent leases. That disclosure listed several previous rental records fraudulently opened in Plaintiff's name, including an entry for **8421 Broad** showing **a lease from 5/21/2022 to 6/20/2023 with monthly rent $2,329 and an ending balance of $25,117.35** – all incurred by

the imposter. That same disclosure identified "8421 Broad" by name and it confirmed that no deposit was returned and multiple late payments occurred. Prior to 2023, Plaintiff did not know of any of this, including that Brookfield had obtained his credit information or that Brookfield's properties were involved, which was also unindicated by the associated inquiry recordings.

## II. ARGUMENT

**A. Brookfield Consented to Indiana-based Personal Jurisdiction.** Brookfield's assertion that it is not subject to personal jurisdiction in Indiana is unavailing. Both general jurisdiction (via consent) and specific jurisdiction are present here. Brookfield is "registered to do business in Indiana as a foreign limited liability company" and has an Indiana registered agent (Corporation Service Company). By complying with Indiana's business registration statutes, Brookfield has voluntarily subjected itself to the jurisdiction of Indiana courts. At minimum, registration manifests Brookfield's purposeful availment of the privilege of conducting business under Indiana law, which carries with it the obligation to answer lawsuits here. Recent authority confirms that a corporation's consent to jurisdiction via state registration is valid. *See generally Mallory v. Norfolk S. Ry. Co., 143 S. Ct. 2028 (2023)* (upholding that a foreign corporation's registration to do business in a state can constitute consent to general jurisdiction there). Here, Brookfield chose to register in Indiana – a clear indication that it expected it might be haled into Indiana courts if disputes arose. Brookfield cannot now disavow that consent simply because it finds this forum inconvenient. By maintaining an active Indiana business registration and agent, Brookfield has consented to this Court's general jurisdiction.

Even setting that aside, Brookfield's business activities and contacts related to Indiana justify the exercise of jurisdiction. Brookfield is not an isolated, local landlord confined to one state; it is a large multifamily property operator with nationwide reach, including ties to Indiana.

Brookfield's principal offices may be elsewhere, but by registering in Indiana, Brookfield signals that it engages in commerce here (or intends to) on a continuous basis. Indeed, Brookfield's own description of its operations shows it owns or manages numerous apartment communities across various states. It is hardly unforeseen that Brookfield could be sued in Indiana, especially by an Indiana resident impacted by Brookfield's conduct. The Due Process Clause permits general jurisdiction where a defendant's affiliations with the forum are "so continuous and systematic as to render them essentially at home" (or by consent). *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Through its Indiana registration and broad business presence, Brookfield meets this threshold – or, at minimum, has consented to be treated as "at home" in Indiana for jurisdictional purposes. Holding Brookfield to account in Indiana for its role in the identity theft scheme *does not offend traditional notions of fair play or substantial justice*, given Brookfield's deliberate decision to do business here and under Indiana law.

**B. Specific Jurisdiction Exists Because Brookfield's Conduct Target**ed an Indiana Resident and Gave Rise to Plaintiff's Claims. Independently, this Court has specific personal jurisdiction over Brookfield because Plaintiff's FCRA claims arise directly out of Brookfield's contacts with the forum. In analyzing specific jurisdiction, courts consider (1) whether the defendant has purposeful minimum contacts with the forum, and (2) whether the plaintiff's claims arise from or relate to those contacts. Both prongs are satisfied here:

Purposeful Contacts: Brookfield's conduct was purposefully directed toward Indiana (where Plaintiff resides and suffered harm). Brookfield, through its screening agents, intentionally accessed Plaintiff's credit information, knowing (or at least having reason to know) that Plaintiff was an individual with Indiana ties. Brookfield's tenant screening inquiries triggered address-discrepancy warnings because Plaintiff's credit file reflected his Indianapolis

address. In other words, when Brookfield (via RentGrow, LeasingDesk, etc.) pulled Plaintiff's credit reports, the data returned by the credit bureaus indicated that Plaintiff's current address was in Indianapolis, IN. Brookfield's agents chose to proceed with using that credit report.

Moreover, Brookfield's nationwide business model inherently involves renting to (and vetting) persons from all over, including Indiana. By participating in the interstate rental market and employing credit reporting services that draw on consumers' nationwide data, Brookfield has purposely interjected itself into interstate commerce such that it should anticipate litigation in a forum where its conduct causes injury. Brookfield cannot claim it was ignorant of Plaintiff's Indiana location; even if the fraudulent applications listed an old Chicago address, Brookfield's screening process exposed the discrepancy with Plaintiff's true Indianapolis address. Brookfield had actual and constructive notice of Plaintiff's Indiana residency during the relevant periods.

**Relatedness (Claims Arise From Indiana Contacts):** Plaintiff's causes of action against Brookfield are directly related to Brookfield's forum contacts. The FCRA claims center on Brookfield's procurement and use of Plaintiff's credit reports without a permissible purpose, and its role in creating fraudulent credit entries in Plaintiff's name. Those very actions were consummated when Brookfield, through its screening vendors, pulled credit data about an Indiana consumer and opened accounts that harmed him in Indiana. The "relationship among the defendant, the forum, and the litigation" could not be closer – Brookfield's forum contact (accessing an Indiana resident's credit file and impacting his credit reputation) *is* the basis of the lawsuit. But for Brookfield's decision to accept and process an application under Plaintiff's identity, there would have been no FCRA violation by Brookfield.

Exercising specific jurisdiction in this case also comports with fairness factors. Plaintiff is an Indiana citizen who was injured in Indiana – it is eminently reasonable to allow him to seek

relief in his home forum. Indiana has a manifest interest in protecting its residents from identity theft and ensuring that out-of-state companies (like Brookfield) that cause harm within Indiana are accountable here. Brookfield, a sophisticated nationwide company, can hardly claim undue burden litigating in Indiana, especially since it has already appointed an agent and presumably operates under Indiana's jurisdiction for any business it does here. In contrast, forcing Plaintiff to chase Brookfield in another forum (when many witnesses and evidence of Plaintiff's damages are in Indiana) would be far more onerous.

Brookfield's Motion attempts to analogize itself to a party with no Indiana contacts, but that argument ignores the realities. This is not a case of "mere injury to a forum resident" with no deliberate contact by the defendant. Rather, Brookfield entered into a virtual transaction with an Indiana resident's credit profile. Courts have found specific jurisdiction in analogous circumstances, such as where a defendant obtains credit information or causes financial harm knowing the plaintiff's forum. (For instance, under the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), intentional conduct aimed at a plaintiff whom the defendant knows is in the forum can establish jurisdiction.) Here, Brookfield's conduct meets that test: by using Plaintiff's identity and credit data (with indicators pointing to Indiana), Brookfield effectively aimed its actions at Indiana, and the brunt of the injury (credit damage, identity theft fallout) was felt by Plaintiff at home in Indiana. Accordingly, Brookfield is subject to specific jurisdiction.

## II. THE CLAIMS ARE TIMELY UNDER THE STATUTE OF LIMITATIONS.

Brookfield next argues that Plaintiff's claims are time-barred because the underlying events occurred in 2022. This argument fails because it ignores the FCRA's explicit "discovery rule" and the facts demonstrating Plaintiff's diligent pursuit of his rights once he discovered the violations. Under the FCRA, an action must be filed "by the earlier of (1) 2 years after the date

of discovery by the plaintiff of the violation… or (2) 5 years after the date on which the violation occurred." 15 U.S.C. § 1681p. Here, Plaintiff's claims are well within both of these limits.

**A. Plaintiff Filed Suit Within 2 Years of Discovering Brookfield's Violations.** The clock on Plaintiff's FCRA claim against Brookfield did not begin to run until Plaintiff knew or had reason to know of Brookfield's involvement in the wrongdoing. As detailed above, Plaintiff had no knowledge in 2022 that Brookfield (or anyone) had impermissibly accessed his credit reports. The identity thieves and the various screening companies kept him completely in the dark. It was later that Plaintiff became aware of unusual inquiries and accounts on his credit file and thus began investigating. Even then, the specific link to **Brookfield** was not immediately apparent. The credit report in January 2023 showed cryptic names like Resident Verify and SafeRent; these are third-party agencies, and Plaintiff could not have known which apartment management companies were behind those inquiries. It took additional time – obtaining disclosures from those agencies and from the apartments themselves – for Plaintiff to uncover Brookfield's identity as an end-user. That information emerged through 2023. For example, the LeasingDesk Screening disclosure (received in December 2023) explicitly tied the 8421 Broad account to Brookfield[3], and correspondence from property managers or debt collectors in mid-2023 also revealed apartment names associated with Brookfield's portfolio (such as Origin and 8th & Grand). Brookfield's actions were effectively hidden behind layers of third-party intermediaries and where Plaintiff was never alerted of the same.

Brookfield may argue that Plaintiff knew of "something wrong" earlier (for instance, noticing inquiries in January 2023) and that he should have discovered Brookfield sooner. But the statute starts when the plaintiff discovers the violation, i.e., the facts constituting the FCRA claim against the particular defendant. Simply seeing unknown inquiries on a credit report is not

the same as knowing who caused them or that a given defendant violated the law. Plaintiff acted with appropriate diligence: he promptly filed disputes with Experian, Equifax, and others in early 2023 and followed the trail of responses. Despite his diligence, it took until later in 2023 to get the full picture. There is no evidence of any undue delay on Plaintiff's part. If anything, it was Defendants' obfuscation and the sophisticated nature of the fraud that delayed discovery.

**B. The Continuing Nature of the Violations Reinforces Timeliness.**

Furthermore, the injuries caused by Brookfield were not confined to a single day in 2022; they continued to accrue and manifest into 2023, extending the timeline of violation. Brookfield's unlawful procurement of Plaintiff's credit report in May and September 2022 led to fraudulent lease obligations that remained open and damaging well into 2023. For example, the lease at 8421 Broad (opened May 21, 2022) was not terminated until June 20, 2023, and it left a massive unpaid balance that was still being reported and pursued in 2023. Plaintiff's credit reports and scores suffered ongoing harm as these delinquent accounts aged. Collection agencies acting on behalf of Brookfield's properties were sending Plaintiff collection notices and offers in mid-2023 for thefraudulent debts. While the Court need not rely on a "continuing violation" doctrine per se (because the discovery rule already saves these claims), the continuous nature of the harm underscores why it is equitable and proper to treat the claims as timely.

Brookfield's position would effectively punish the victim of identity theft for not immediately knowing the identity of every participant in the fraud. That is not what Congress intended. Congress built a discovery accrual rule into FCRA to accommodate situations of latent or obscured injury. Courts routinely hold that where a plaintiff is unaware of a report's issuance

or a furnisher's identity at the time of violation, the statute does not begin to run until the plaintiff learns of it. *See, e.g., Merriman v. Equifax Info. Servs., LLC, 2021 WL 5937732, at* 3 (D. Kan. Dec. 16, 2021)* (FCRA claims accrued when plaintiff "first became aware" of the offending report, not when the report was actually published without her knowledge). Here, Plaintiff first became aware of Brookfield's offending conduct in 2023; thus, his August 2025 filing is timely by statute.

Additionally, Plaintiff's filing is within the FCRA's **five-year absolute limit** from the date of violation. The earliest possible violation by Brookfield was in April 2022 (if one counts the Origin inquiry), and the latest was in September 2022. The complaint was filed in August 2025[21], which is barely three and a half years from the earliest violation – well under the five-year cap. The claims asserted against Brookfield in this litigation are not time-barred.

## V. CONCLUSION

Brookfield's motion seeks to escape liability on technical grounds, but the record and law do not support dismissal. This Court has jurisdiction here: Brookfield chose to register in Indiana and conduct business affecting Indiana consumers, and Plaintiff's claims directly arise from Brookfield's conduct that harmed him in Indiana. Additionally, Plaintiff's claims were filed within the allowable period after he discovered Brookfield's involvement, satisfying the FCRA's statute of limitations. Brookfield should not be allowed to misuse procedural rules to avoid answering for its role in enabling a serious identity theft and credit abuse scheme.

**For the foregoing reasons,** Plaintiff respectfully requests that the Court deny Brookfield Properties Multifamily LLC's Motion to Dismiss in its entirety. Plaintiff further requests all such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ James Louis Policchio*
James Louis Policchio (34737-49)
**JL POLICCHIO LAW LLC**
james@jlouislaw.com; 317.779.9919

*/s/ Kyle Schumacher*
PO Box 558, Spring Branch, TX 78070
503-482-8137;kyle@schumacherlane.com
***Counsel For Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on **November 25, 2025**, I filed a copy of the foregoing electronically with the Clerk of the Court. As authorized by Fed. R. Civ. P. 5, notice of this filing will be sent to all attorneys of record through the Court's Electronic Case Filing System.

Respectfully submitted,

*/s/ James Louis Policchio*
James Louis Policchio (34737-49)