UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SETH CAMERON VIRGIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01641-MPB-MJD |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS INC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

On December 5, 2025, Defendants RentGrow Inc. and Yardi Systems, Inc., (hereinafter

"Defendants") filed their reply brief in support of their motion to dismiss. [Dkt. 302.] In that

brief, Defendants identified six cases cited by Plaintiff's attorneys, James Policchio and Kyle

Schumacher,[1] in Plaintiff's response to the motion to dismiss, [Dkt. 294], that appeared to be

fabricated, as well as several citations to cases that exist but do not relate to the issues for which

they are cited. *See* [Dkt. 302 at 5-6]. The reply brief further identified two additional cases cited

by Plaintiff in two other filings that appeared to be fabricated. *See* [Dkt. 302 at 7]. On

December 15, 2025, Defendants filed a Notice to the Court of Further Fabricated Case Law.

[Dkt. 333.] In that filing, Defendants identified two additional fabricated cases cited by

Plaintiff's counsel, this time in Plaintiff's response to the motion to dismiss filed by Defendants

Mission Rock Residential, LLC, and Abbotts Run Asset Management, LLC, [Dkt. 331], a

document that was filed **after** Defendants had raised the issue of fabricated citations.

---

[1] The signatures of both Mr. Policchio and Mr. Schumacher appear on each of the briefs at issue.

On December 16, 2025, the Undersigned issued an Order to Show Cause pursuant to Federal Rule of Civil Procedure 11(c)(3), directing Mr. Policchio and Mr. Schumacher to appear and show cause why they should not be sanctioned for violating Rule 11(b).  [Dkt. 338.]  The Order to Show Cause also required counsel to file a Notice containing a chart with the following information:

1. A list of each filing Plaintiff's counsel have made in this case;

2. For each filing, an indication whether the filing contains any case citations;

3. For each filing that contains citations, a list of those citations; and

4. For each citation, either a certification that Plaintiff's counsel have confirmed that it exists and is accurately cited or an indication that it does not exist or is not accurately cited.

Counsel did so.  [Dkt. 345.]  The Notice confirms that the following citations do not exist or are not accurately cited:

- In Docket 115:  *Myers v. Passport Health*, 2013 WL 5819270 (S.D. Ind. Oct. 29, 2013) (non-existent)

- In Docket 240:  *Myers v. Passport Health*, 2013 WL 5819270 (S.D. Ind. Oct. 29, 2013) (non-existent)

- In Docket 289:  *Merriman v. Equifax Info. Servs., LLC*, 2021 WL 5937732 (D. Kan. Dec. 16, 2021) (non-existent)

- In Docket 294:  *Treece v. Perrillo*, No. 1:17-cv-00406, 2018 WL 3815004 (S.D. Ind. Aug. 10, 2018); *Armstrong v. Kroger Co.*, 621 F.2d 934 (8th Cir. 1980); *Hinkle v. CBE Grp.*, 827 F.3d 129 (5th Cir. 2016); *Wigington v. Hill-Soberg Co.*, 396 F.2d 228 (5th Cir. 1968); *Jenkins v. Equifax Info. Servs., LLC*, 736 F. Supp. 2d 962 (E.D. Va. 2010); and *Rodriguez*

*v. Pasquarella*, 2019 WL 2411480 (N.D. Ill. June 7, 2019) (all non-existent); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301 (11th Cir. 2009); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232 (10th Cir. 2015); *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83 (D. Mass. 2007); and *King v. Gen. Info. Servs., Inc.*, 903 F. Supp. 2d 303 (E.D. Pa. 2012) (all misrepresented).

- In Docket 331:  *Myers v. Asset Acceptance, LLC*, 750 F.3d 910, 915-17 (11th Cir. 2014), and *Schuh v. American Express Bank, FSB*, 2019 WL 132741 (N.D. Ind. Jan. 8, 2019) (both non-existent).

Mr. Policchio and Mr. Schumacher appeared at the show cause hearing on January 6, 2026.  [Dkt. 351.]  The Undersigned now makes the following recommendation.

## I.  Mr. Schumacher

The testimony at the Show Cause Hearing has convinced the Undersigned that, while Mr. Schumacher's signature was affixed to the filings at issue by Mr. Policchio, Mr. Schumacher was not responsible for the filings in any way.  The filings were made by Mr. Policchio and Mr. Policchio takes full responsibility for them.  In addition, Mr. Policchio confirmed during the hearing that Mr. Schumacher never saw the briefs in question prior to their filing, and never authorized Mr. Policchio to affix Mr. Schumacher's signature to those briefs.  Accordingly, the Undersigned does not recommend any sanctions against Mr. Schumacher.

## II.  Mr. Policchio

At the hearing, Mr. Policchio acknowledged that he was fully responsible for the errors in the briefs that he signed and filed.  Mr. Policchio was contrite and did not attempt to excuse his lapses in any way; indeed, his reaction to his own failures is best described as mortification.  By way of explanation—but not as an excuse—Mr. Policchio explained that he had grossly

underestimated the time that litigating this case against dozens of defendants would require and

that he was overwhelmed by the workload.  In addition, for monetary reasons, Mr. Policchio had

terminated his access to LEXIS, which he was accustomed to using for legal research and cite-

checking.  The Undersigned believes Mr. Policchio's representation that he has now taken

appropriate measures to ensure that no such lapses will occur in the future.

Mr. Policchio's response to the position he finds himself in is commendable.  However,

that does not change the fact that Mr. Policchio finds himself in this position because he failed to

take the most basic of actions—checking the citations in his own briefs before filing them.[2]  As

discussed below, this failure constitutes a failure to satisfy a fundamental obligation of an

attorney to his client and to the Court.

### A. Federal Rule of Civil Procedure 11

Rule 11 provides in relevant part:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

. . .

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

---

[2] The Court notes that most of the cases cited below involve AI-generated hallucinated citations.  Mr. Policchio's explanation for the errant citations in his briefs does not involve the use of AI.  Rather, Mr. Policchio stated that the errors were the result of cutting and pasting from documents Mr. Policchio had saved into a case management program when working on prior cases.  It is unclear to the Court how that process could have resulted in non-existent citations being created, but the distinction is irrelevant.  The issue in this and the cited cases is not the use of AI to assist in legal work; it is the failure to review the validity and content of the cases cited in briefs filed with the Court.

Fed. R. Civ. P. 11(b).  A court may, *sua sponte*, order an attorney to show cause why conduct specifically described in the order has not violated Rule 11(b).  Fed. R. Civ. P. 11(c)(3).  If the court then determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on that attorney.  Fed. R. Civ. P. 11(c)(1).  An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.  Fed. R. Civ. P. 11(c)(6).

"The standard for imposing sanctions under Rule 11 is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Fed'n of State Med. Boards of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987) (collecting cases), *overruled on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989).  One specific inquiry for determining whether sanctions are appropriate is "whether the party or attorney made a reasonable inquiry into the law." *Brown*, 830 F.2d at 1435, *see* Fed. R. Civ. P. 11(b)(2). Indeed:

> Rule 11 requires counsel to study the law before representing its contents to a federal court.  An empty head but a pure heart is no defense.  The Rule requires counsel to read and consider before litigating.  Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under the Rule.

*Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) (citations omitted).

Courts have consistently held for decades that failing to check the treatment and soundness—let alone the existence—of a cited case warrants sanctions.  *See, e.g., Salahuddin v. Coughlin*, 999 F. Supp. 526, 529 (S.D.N.Y. 1998) (noting that Shepardizing would have led defense counsel to a key case); *Brown v. Lincoln Towing Serv.*, No. 88C0831, 1988 WL 93950 (N.D. Ill. 1988) (imposing sanctions where the attorney filed a claim based on an expired federal statute); *Pravic v. U.S. Indus.-Clearing*, 109 F.R.D. 620, 623 (E.D. Mich. 1986) (holding that the act of relying on another attorney's memorandum without Shepardizing the cases cited warranted

sanctions); *Blake v. Nat'l Cas. Co.*, 607 F. Supp. 189, 191 (C.D. Ca. 1984) (in imposing sanctions, noting that Shepardizing cases already cited would have led to controlling authority).

The advent of modern legal research tools implementing features such as Westlaw's KeyCite and Lexis's Shepardization has enabled attorneys to easily fulfill this basic duty, and there is simply no reason for an attorney to fail to do so. Such has been the view for decades: "It is really inexcusable for any lawyer to fail, as a matter of routine, to Shepardize all cited cases (a process that has been made much simpler today than it was in the past, given the facility for doing so under Westlaw or LEXIS)." *Gosnell v. Rentokil, Inc.*, 175 F.R.D. 508, 510 n.1 (N.D. Ill. 1997). Confirming that a case is good law is a basic, routine matter and something that is expected from a practicing attorney. As noted in the case of an expert witness, an individual's "citation to fake, AI-generated sources . . . shatters his credibility." *See Kohls v. Ellison*, 2025 WL 66514, at *4 (D. Minn. Jan. 10, 2025). The same is true even if the fake citations were somehow generated without the knowing use of AI.

Mr. Policchio admits that he did not make the requisite reasonable inquiry into the law before filing his brief. Whether or not AI was the genesis of the non-existent citations, Mr. Policchio's failure to review them before submitting them to the court was a clear violation of Rule 11. *See United States v. Hayes*, 763 F. Supp. 3d 1054, 1066-67 (E.D. Cal. 2025), *reconsideration denied*, No. 2:24-cr-0280-DJC, 2025 WL 1067323 (E.D. Cal. Apr. 9, 2025) ("The Court need not make any finding as to whether Mr. Francisco actually used generative AI to draft any portion of his motion and reply, including the fictitious case and quotation. . . . Citing nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court. It does not matter if generative AI told you so.") (citations and quotations marks

omitted).  As the court in *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1256-57 (N.D. Ala. 2025),

aptly put it:

> Every lawyer knows that citing fake cases in a court filing is a terrible decision.
> No one here is attempting to defend it.  In the few years that generative AI has
> affected court filings, it has become well established that "[m]any harms flow
> from the submission of fake opinions." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d
> 443, 448 (S.D.N.Y. 2023); *see, e.g., Dehghani v. Castro*, No. 2:25-cv-00052-
> MIS-DLM, 782 F.Supp.3d 1051 (D.N.M. May 9, 2025); *Bevins v. Colgate-
> Palmolive Co.*, No. 25-576, 2025 WL 1085695 (E.D. Pa. Apr. 10, 2025); *Ferris
> v. Amazon.com Servs., LLC*, No. 3:24-cv-304-MPM-JMV, 778 F.Supp.3d 879
> (N.D. Miss. Apr. 16, 2025); *United States v. Hayes*, 763 F. Supp. 3d 1054 (E.D.
> Cal. 2025), *reconsideration denied*, 2:24-cr-0280-DJC, 2025 WL 1067323 (E.D.
> Cal. Apr. 9, 2025); *Sanders v. United States*, 176 Fed. Cl. 163 (Fed. Cl. 2025);
> *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489 (D. Wyo. 2025); *Gauthier v.
> Goodyear Tire & Rubber Co.*, No. 1:23-cv-281, 2024 WL 4882651 (E.D. Tex.
> Nov. 25, 2024); *Park v. Kim*, 91 F.4th 610 (2d Cir. 2024).

> Some such harms affect the case at hand:  "The opposing party wastes time and
> money in exposing the deception," and "[t]he client may be deprived of arguments
> based on authentic judicial precedents." *Mata*, 678 F. Supp. 3d at 448. While the
> court takes time to investigate, other cases may be disrupted or deprived of judicial
> attention.  Other harms affect the judicial system:

>> There is potential harm to the reputation of judges and courts whose
>> names are falsely invoked as authors of the bogus opinions and to the
>> reputation of a party attributed with fictional conduct. It promotes
>> cynicism about the legal profession and the American judicial
>> system. And a future litigant may be tempted to defy a judicial ruling
>> by disingenuously claiming doubt about its authenticity.

> *Id.* at 448-49.

The fact that Mr. Policchio did not file the brief with the intention of deceiving the court

does not excuse his failure to check the citations therein.  *See Ordower v. Feldman*, 826 F.2d

1569, 1574 (7th Cir. 1987) ("Good faith is not a defense to the imposition of Rule 11

sanctions.").  Whether a case cite is obtained from a law review article, a hornbook, or through

independent legal research, the duty to ensure that any case cited to a court is good law is nearly

as old as the practice of law itself.  As previously noted, the development of resources such as

Shephard's citation system provided lawyers the tools to accomplish that most basic of tasks.[3]  It is Mr. Policchio's failure to comply with that most basic of requirements that makes his conduct sanctionable.

The Undersigned finds that Mr. Policchio violated Rule 11 and that sanctions for that violation are appropriate.  In imposing sanctions, a court must keep in mind the basic principle that "[i]n choosing a sanction . . . 'the least severe sanction [that is] adequate to serve the purpose should be imposed.'" *Brown*, 830 F.2d at 1437 (quoting *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir. 1987) (footnote omitted) (quoting Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 201 (1985))).  One such purpose is to impose costs on the careless or reckless lawyer who unnecessarily burdened opposing counsel or the court.  *See Thornton*, 787 F.2d at 1154.  While compensation is an important consideration in issuing sanctions, "[a]n even more important purpose is deterrence."  *Brown*, 830 F.2d at 1438; *see* Fed. R. Civ. P. 11(c)(4).

The Undersigned, regrettably, has faced this issue in two other cases in the past year.  In the first, monetary sanctions of $6,000 were imposed for three briefs containing hallucinated citations.  *See Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, 2025 WL 1511211 (S.D. Ind. May 28, 2025) ($6,000 sanction).[4]  In the second, the Undersigned has recommended a $7,500 sanction for a brief containing hallucinated citations.  *See Davis v.*

---

[3] Frank Shepard introduced his print citation index in the 1870s, though other precursor citation series had existed since the early nineteenth century.  *See* Laura C. Dabney, *Citators: Past, Present, and Future*, 27 Legal Reference Servs. Q. 165, 166 (2008).

[4] The Undersigned recommended a $15,000.00 sanction in that case:  $5,000 for each of three briefs that contained non-existent citations.  The District Judge reduced the sanction to $6,000, taking into account "the steps [the sanctioned attorney] has taken 'to educate himself on the responsible use of AI in legal practice' and adhere to 'the highest standards of professional conduct moving forward.'"  *HoosierVac LLC*, 2025 WL 1511211 at *1.

*Marion Cnty. Superior Ct. Juv. Det. Ctr.*, 2025 WL 2502308 (S.D. Ind. Sept. 2, 2025).  The attorney's objection to that recommendation remains pending.  A multitude of other cases around the country have dealt with the same issue.  *See, e.g.*, *Gauthier*, 2024 WL 4882651 ($2,000 sanction); *Mortazavi v. Booz Allen Hamilton, Inc.*, 2024 WL 4308032 (C.D. Cal. Sept. 26, 2024) ($2,500 sanction); *Mata*, 678 F. Supp. 3d 443 ($5,000 sanction); *In re Richburg*, 2025 WL 2470473 (Bankr. D.S.C. Aug. 27, 2025); *Chenco Engineering & Consulting Gmbh v. Do-Fluoride New Materials Co. Ltd.*, 2025 WL 2430556 (D. Idaho Aug. 22, 2025); *Hall v. Acad. Charter Sch.*, 2025 WL 2256653 (E.D.N.Y. Aug. 7, 2025).  There are undoubtedly many more than those cited herein.

Given the distressing number of cases calling out this conduct—citing to cases in court filings without checking the accuracy of the citations—it is clear that the imposition of modest sanctions has failed to act as a deterrent.  Accordingly, the Undersigned **RECOMMENDS** that Mr. Policchio be sanctioned $10,000.00 for his Rule 11 violations in this case.  The Court finds that no lesser sanction will serve the necessary deterrent purpose.

### B. Indiana Rules of Professional Conduct

The District Court for the Southern District of Indiana holds attorneys to the ethical obligations set forth in the Indiana Rules of Professional Conduct.  Local R. 83-5(f).

> When misconduct or allegations of misconduct that, if substantiated, would warrant discipline of an attorney who is a member of the bar of the court or has practiced in the court come to the attention of a judicial officer, including a bankruptcy judge or a magistrate judge, whether by complaint or otherwise, the judicial officer may refer the matter to the Chief Judge.  The Chief Judge may then refer the matter to one or more of the following:
>
> (1) the Indiana Attorney Disciplinary Commission for investigation and prosecution,
>
> (2) another disciplinary authority having jurisdiction over the attorney,
>
> (3) the Department of Justice or other law enforcement agency, or

(4) recruited counsel for investigation and the formulation of a recommendation for further action.

Local R. of Disciplinary Enf't 2(a).  At least three of the Indiana Rules of Professional Conduct are implicated here, and the Undersigned will address them each in turn.

### 1. Rule 1.1. Competence

"A lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  Ind. R. of Prof. Conduct 1.1.  It is clear that Mr. Policchio failed to provide competent representation when he submitted five briefs that contained fabricated legal citations. These actions flouted the requisite legal knowledge, skill, preparation, and especially thoroughness reasonably necessary for Mr. Policchio's representation of his client.

### 2. Rule 3.1. Meritorious Claims and Contentions

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."  Ind. R. of Prof. Conduct 3.1.  This Rule mirrors the requirements of Rule 11(b)(2), and likewise proscribes presenting unfounded legal bases.  There is no merit in relying on non-existent cases, so Mr. Policchio's conduct clearly disregarded this Rule.

### 3. Rule 3.3. Candor Toward the Tribunal

"A lawyer shall not knowingly: . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."  Ind. R. of Prof. Conduct 3.3(a)(1).  It is undisputed that Mr. Policchio made false statements of law to the court when he relied on cases that do not exist.  Moreover, Mr. Policchio did so "knowingly"—he knowingly failed to fulfill his duty to review the briefs he filed and

10

verify that the law he presented was good law. As such, the Undersigned believes that discipline for violation of Indiana Rule of Professional Conduct 3.3 is appropriate as well.

### III. Conclusion

For the reasons set forth above, the Undersigned, in his discretion, hereby **RECOMMENDS** that Mr. Policchio be personally **SANCTIONED** in the amount of $10,000.00 pursuant to Federal Rule of Civil Procedure 11 for filing five briefs that contained citations to non-existent cases. In addition, the Undersigned **REFERS** the matter of Mr. Policchio's misconduct in this case to the Chief Judge pursuant to Local Rule of Disciplinary Enforcement 2(a) for consideration of any further discipline that may be appropriate.

Mr. Policchio is **ORDERED** to provide a copy of this order to his client, Seth Virgil, and to file a certification that he has done so within seven days of the date of this order.

In closing, as noted above, this is the third time in the last year that the Undersigned has faced a similar issue. We live in a world of rapid technological advancement. A world in which many individuals have concerns that their jobs may be replaced by increasingly educated machines.

The practice of law is not just a job, it is a profession; a profession with standards and ethical responsibilities. One of the most troubling aspects of these situations is the lack of respect for the profession, and the lack of respect by the offending attorneys for their own personal capabilities, that these situations represent.

One would expect that, when individuals choose this profession, they do so in part because they believe they have some talent for the work. One would expect that, after several years of law school, and more years of practice, those attorneys believe they bring some level of value to their clients beyond that of a machine. Yet these situations represent an abdication of

those personal and professional responsibilities to those very machines, which to date have not proven themselves up to the task.

While the Undersigned has long recognized the value of the proper and efficient use of technology, my confidence in the profession and the generations of lawyers who have shaped it prevents me from believing that it can ever be replaced by a machine, no matter how advanced. However, the preservation of that profession requires ever increasing levels of diligence and vigilance from each and every attorney and judge involved in the process. Absent that, someday clients may well be better off accepting advice from a machine as opposed to a careless and inattentive attorney. That is a day the profession of law must not allow to come to pass.

Any objections to this Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  12 FEB 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all ECF-
registered counsel of record via email generated
by the court's ECF system

Chief Judge James R. Sweeney, II